UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  04/28/2026__

-----------------------------------------------------------------------X
    :
ANNUITY AND WELFARE FUNDS OF THE    :
NORTHEAST DISTRICT COUNCIL OF THE    :
OPERATIVE PLASTERERS' AND CEMENT    :
MASONS' INTERNATIONAL ASSOCIATION, et al.,  :    25-cv-10278 (LJL)
    :
       Plaintiffs,    :    OPINION AND ORDER
    :
    -v-    :
    :
GRACI PAVING ASSOCIATES, INC.,    :
    :
       Defendant.    :
    :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs move, pursuant to Federal Rule of Civil Procedure 55(a), for a default judgment in the amount of $38,978.17 plus additional prejudgment interest.  Dkt. No. 12.  For the following reasons, the motion for default judgment is granted.

## BACKGROUND

The Court assumes the truth of the well-pleaded allegations of the complaint.

Local 780 of the Operative Plasterers' and Cement Masons' International Association of the United States and Canada, AFL-CIO ("Local 780") is a labor organization as defined in Section 2 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152.  Dkt. No. 1 ¶ 13. Graci Paving Associates, Inc. ("Defendant" or "Graci Paving") is a New York corporation, with its principal place of business in Massapequa, New York, and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Section 301 of the LMRA, 29 U.S.C. § 185. *Id.* ¶¶ 15, 18.  It employs individuals who are represented by Local 780.  Dkt. No. 14 ¶ 5; Dkt. No. 15 ¶ 2.

Graci Paving is bound to a series of collective bargaining agreements that Local 780 has

negotiated with The Cement League, an employers' association, which establish the terms and conditions for the employment of cement masons in the construction paving industry (the "Collective Bargaining Agreement," or "CBA").  Dkt. No. 14 ¶ 5.  Under that agreement, Graci Paving is obligated to remit, at specified rates, annuity, pension, welfare, training and labor management cooperation trust fund contributions along with dues checkoff, organizational fund, education and political action committee allocations.  Dkt. No. 1 ¶ 20.  The remittances are based upon each straight, overtime and double time hour of work performed by those employees covered by the CBA.  *Id.*  The CBA states:

> Payments covering contributions to the NEDC OPCIMA Welfare Fund plus Vacation Benefit, Annuity Fund, Apprenticeship Fund, the Cement Masons' Local 780 Pension Fund, the Cement League Advancement and Promotion Fund ("CLAPF"), the Cement League, the Local 780 Labor-Management Trust Cooperation, and NEDC OPCMIA Organizing Fund, the NEDC OPCMIA Education Fund and the Union Dues Check Off shall be made weekly. Contributions required to be made to Funds governed by ERISA become Fund assets and Fund property of each respective Fund immediately upon the date on which the contributions are due if so provided for by the respective Fund Trust agreements.

Dkt. No. 14-3 at 13.

Cement Masons' Local 780 Pension Fund ("Local 780 Pension Fund") and the Annuity, Welfare, Apprenticeship and Labor Management Cooperation Funds of the Northeast District Council of the Operative Plasterers' and Cement Masons' International Association ("NEDC Trust Funds") are joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA.  Dkt. No. 1 ¶ 4.

In accordance with the CBA and the Trust Agreements establishing the Local 780 Pension Fund and the NEDC Trust Funds, Graci Paving consented to the performance of an audit of its books and records to determine whether it had made all of the required contribution payments to Plaintiffs for the period of January 1, 2024 through January 31, 2025.  *Id.* ¶ 22.  The

audit determined that Graci Paving failed to provide contractually required annuity, pension, welfare, training, and labor management cooperation trust fund contributions along with dues checkoff, organizational fund, education, and political action committee allocations together with interest for the period of January 1, 2024 through January 31, 2025 in the amount of $27,475.58. *Id.* ¶ 23. Dkt. No. 14-8.

## PROCEDURAL HISTORY

Plaintiffs initiated this action by complaint filed on December 11, 2025.  Dkt. No. 1. They bring causes of action for breach of the CBA and a violation of Section 514 of ERISA, 29 U.S.C. § 1145.  *Id.* ¶¶ 21–30.  Plaintiffs allege that Graci Paving owes annuity, pension, welfare, training, and labor management cooperation trust fund contributions along with dues checkoff, organizational fund, education, and political action committee allocations and had breached the terms and conditions of the CBA by which it was bound.

On February 6, 2026, Plaintiffs filed an affidavit of service reflecting that service was made on January 14, 2026 on Defendant through the New York Secretary of State.  Dkt. No. 6. Plaintiffs requested a certificate of default from the Clerk of Court and served the request on Defendant at its business address.  Dkt. Nos. 7–9.  On February 10, 2026, the Clerk of Court issued a certificate of default.  On February 20, 2026, Plaintiffs filed this motion for a default judgment supported by a statement of damages, the declaration of counsel, three affidavits, and a memorandum of law.  Dkt. Nos. 12–18.  Plaintiffs served the motion on Defendant.  Dkt. No. 19. Defendant did not respond.  The Court held a hearing on the motion for a default judgment on April 17, 2026.  Plaintiffs attended.  Defendant did not.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a

3

default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id.* (citation omitted).  "The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."  *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020).  Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).  A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [his] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.* 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (citation omitted). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

### I.    Liability

The factual allegations of the Complaint establish that Defendant is liable for the delinquent pension and annuity contributions under 29 U.S.C. § 1145 and the CBA.

Section 1145 requires that "every employer who is obligated to make contributions . . . under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C § 1145. An ERISA "employer" is defined as "any person acting directly

5

as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan." 29 U.S.C. § 1002(5); *see Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575 (2d Cir. 1995) (applying this definition of "employer" to 29 U.S.C. § 1145). Graci Paving, as employer, and Local 780 are parties to the CBA, which requires Graci Paving to make contributions to the NEDC Trust Funds and Local 780 at specified rates on behalf of its employees covered by the CBA.

"ERISA § 502(a)(3) allows plan participants, beneficiaries or fiduciaries to bring a civil action to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or . . . obtain other appropriate equitable relief." *Levi v. McGladrey LLP*, 2016 WL 1322442, at *5 (S.D.N.Y. Mar. 31, 2016) (citing 29 U.S.C. § 1132(a)(3)). A covered employer violates ERISA when it fails to make payments required by a collective bargaining agreement. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189–90 (2d Cir. 2015) ("Under ERISA, the corporate defendant is liable for unpaid contributions . . .") (internal quotation omitted); *Durso v. Andover Subacute & Rehab.*, 2025 WL 2355761, at *3 (E.D.N.Y. Aug. 14, 2025) (holding that default judgment was warranted where the employer did not adhere to its contribution requirements under ERISA); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (holding the plaintiff established liability under ERISA where the plaintiff alleged "that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions").

The uncontroverted allegations establish that Defendant is bound by the CBA and the Trust Agreements. *See* Dkt. No. 1 ¶¶ 19–20. These agreements require that Defendant make certain contributions to the NEDC Trust Funds and adhere "to the terms and conditions" of the

6

CBA and the "truest agreements establishing said Funds." Dkt. No. 14-3 at 13–14.  To this end, "Section 515 of ERISA, [29 U.S.C. § 1145], requires every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement to make such contributions."  *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 217–18 (E.D.N.Y. 2016) (citing *Gesualdi v. Pecgro Trucking, Inc.*, 2015 WL 5608149, at *3 (E.D.N.Y. Aug. 13, 2015)).

Plaintiffs have sufficiently pleaded that Graci Paving was "obligated to make contributions" as an "employer" to the Funds in accordance with the terms of the CBA between January 1, 2024, and January 31, 2025.  Plaintiffs allege that Defendant failed to make $24,315.29 in required contributions.  Dkt. No. 14-8 at 1.  These allegations, accepted as true, establish Defendant's liability.  *See, e.g.*, *Alston as Tr. of Loc. 272 Labor-Mgmt. Fund v. Select Garages*, LLC, 2025 WL 472581, at *5 (S.D.N.Y. Jan. 21, 2025) (holding that allegations that the defendant was an employer that failed to make required contributions to funds were sufficient to establish liability on a motion for a default judgment); *Trs. of Sheet Metal Workers' Loc. Union No. 28 Funds & Plans v. Air Wise Heating & Cooling, Inc.*, 2020 WL 2846693, at *2 (S.D.N.Y. June 2, 2020), *report and recommendation adopted*, 2020 WL 3440503 (S.D.N.Y. June 23, 2020); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Ogee Constr., LLC*, 2018 WL 5886441, at *1 (S.D.N.Y. Nov. 9, 2018).

## II.    Damages

As to damages, Plaintiffs seek damages consisting of unpaid contributions to the Funds, interest, liquidated damages, and attorneys' fees and costs under 29 U.S.C. § 1145 and under the CBA.  Damages for violating Section 1145 are assessed under Section 1132(g)(2), which provides that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to

7

enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court

shall award the plan":

(a) the unpaid contributions,

(b) interest on the unpaid contributions,

(c) an amount equal to the greater of —

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions],

(d) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(e) such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan[.]

29 U.S.C. § 1132(g)(2).

### A.      Unpaid Contributions

The first category of damages sought by Plaintiffs are the unpaid contributions due

between January 1, 2024 to January 31, 2025.  The amounts owed in welfare, vacation benefits,

annuity apprentices-training and pension contributions, along with IAP, labor-management,

organizing, education, and union dues check-offs are identified in the audit report supplied by

Plaintiffs.  Dkt. No. 14-8; *see* Dkt. No. 16.  The auditor reviewed the CBA to determine that

Plaintiffs were covered, reviewed the contribution history for Graci Paving, and then conducted

the audit using paycheck stubs of the employee at issue.  *Id.* at 5.  The auditor then "[c]alculated

the amount of contributions due to the Pension Fund based on the hours subject to contribution."

*Id.*  The auditor did so by "taking the number of straight, overtime and double time hours worked

each month by Local 780 member Paul Brennan and multiplying the categories of hours by their

respective fringe benefit contribution rates which have been collectively bargained for."  Dkt.

No. 18 at 8 (citing Dkt. No. 14-9).  The total amount due is $24,315.29.  Dkt. No. 14-8.  That is further broken down into $6,559.79 in trust (welfare), $4,851.90 in pension, $6,102.36 in annuity, $385.88 in apprenticeship, $1,769.98 in union check-off, $464.62 in international, $3,559.71 in vacation, $25.59 in PAC, $330.70 for the organizing fund, $25.59 for the education fund, $162.73 in IAP, and $76.44 for labor management.  Dkt. No. 25.

"Defendant has neither appeared in the case nor 'introduced any evidence that would suggest that these findings are inaccurate.'"  *Broach v. Metro. Exposition Servs., Inc.*, 2020 WL 3892509, at *6 (S.D.N.Y. July 10, 2020) (quoting *Trs. of Sheet Metal Worker's Loc. Union No. 28 Funds & Plans*, 2020 WL 2846693, at *2–3).  The Court finds that the audit report is based on substantive evidence and Plaintiffs are entitled to the amount requested in unpaid contributions.

### B.    Prejudgment Interest

Employers who make contributions to an employee benefit plan must "make such contributions in accordance with the terms and conditions of such plan."  29 U.S.C. § 1145.  If the employer fails to make contributions in accordance with the plan, Section 1132(g)(2) provides that, following a successful action by a plan's trustees to recover unpaid contributions due under a plan, "the court shall award the plan . . . (B) interest on the unpaid contributions."  29 U.S.C. § 1132(g)(2).  ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."  *Id.*

Plaintiffs seek prejudgment interest calculated at the rate of 10% based on the principal sum of $24,315.29 in contributions owed.  That rate is set in Article XII of the CBA, Dkt. No. 14-3 at 17.  The auditor calculated the dollar value of the interest due by multiplying the number of months delinquent by the interest rate of 10% and then dividing that value by 12 months

multiplied by the amount owed in straight overtime and/or double-time contributions.  Dkt. No. 16 ¶ 5.  Interest was calculated through November 30, 2025.  *Id.*  That is sufficient to show entitlement to prejudgment interest.  *See Broach*, 2020 WL 3892509, at *8 (requiring that Plaintiffs "file an affidavit specifying the basis for their calculations.").

Plaintiffs also request additional interest at a rate of 18% for the period commencing December 1, 2025, through the date of entry of a final judgment.  The relevant Trust Agreements provide that in the event of commencement of an enforcement action to compel the payment of contributions, Plaintiffs NEDC Trusts Funds and Local 780 Pension Fund are entitled to "interest on such Unpaid Contributions at a rate of 18% per annum."  Dkt. No. 14-4 § 8.10; Dkt. No. 14-5 § 8.10(b); Dkt. No. 14-6 § 7.10(b).  The CBA too states that adjudication of any collection matter shall include an award of "interest at eighteen percent (18%) per annum."  Dkt. No. 14-3 at 16. ERISA states that "interest on unpaid contributions shall be determined by using the rate provided under the plan," 29 U.S.C. § 1132(g)(2), which here is 18% for unpaid contributions following an action to compel payment.  Plaintiffs have established their entitlement to interest following commencement of the enforcement action on December 1, 2025 at a rate of 18% per annum.

Interest for the period from December 1, 2025 through the date of judgment shall be calculated pursuant to the formula detailed in the Bamberg affidavit, as was applied to the 10% interest rate relevant pre-enforcement.  Dkt. No. 16 ¶ 5.

### C.    Liquidated Damages

Plaintiffs also seek $4,863.06 in liquidated damages pursuant to the terms of the CBA as enforced under the LMRA and pursuant to the terms of the Trust Agreements as enforced under ERISA.  Section 1132(g)(2)(C) provides that "the court shall award the plan . . . (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages

provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C).  The Trust Agreements provide that liquidated damages shall be calculated at the rate of 20.0% of the amount owed in contributions.  Dkt. No. 14-4 § 8.10(c); Dkt. No. 14-5 § 9.10(c).  The CBA also states that if, following proceedings, the employer is found liable, it must pay "liquidated damages of twenty percent (20%) of the delinquent contributions, reasonable attorney's fees, and actual court costs and audit costs."  Dkt. No. 14-3 at 19.  This value is not in excess of the statutory cap of 20%.

Plaintiffs have submitted in an affidavit that they calculated $4,863.06 in liquidated damages by "applying the 20% penalty to the contribution deficiency of $24,315.29."  Dkt. No. 16 ¶ 6.  They are entitled to the liquidated damages that they seek.

### D.    Administrative Charge

Plaintiffs request an administrative charge as well, due under the terms of the CBA and the Trust Agreements.  Each Trust Agreement provides for the imposition of an administrative charge equal to 10% of the delinquent contributions in the event of failure to timely remit fringe benefit contributions.  *See* Dkt. No. 14-4 § 8.6(a); Dkt. No. 14-5 § 8.6(a); Dkt. No. 14-6 § 7.6(a); Dkt. No. 14-7 § 9.6(a).  The CBA too notes that the Agreement "shall bind and obligate the Employer paying the contributions to the terms and conditions of this Agreement and the trust agreement(s) establishing said Funds in the same manner as actually signing said trust agreement(s)."  Dkt. No. 14-3 at 13–14.  Although ERISA does not specifically speak to such administrative costs, it authorizes "such other legal and equitable relief as a court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  Courts "routinely interpret" that section to authorize, as the part of a damages award, fees not otherwise covered by ERISA.  *See Kilkenny v. Graci Paving Assocs., Inc.*, 2026 WL 783955, at *8 (E.D.N.Y. Mar. 20, 2026).

11

Plaintiffs have provided an affidavit detailing the calculation of the fee requested as an administrative charge, which the declarant describes as accomplished by "applying the 10% administrative charge to the contribution deficiency of $24,315.29." Dkt. No. 16 ¶ 7. Plaintiffs are entitled to damages of $2,431.53 for the administrative charges.

### E.    Attorneys' Fees and Costs

Plaintiffs seek to recover attorneys' fees totaling $3,560.00, calculated based on 8 hours of work performed at the hourly rate of $445.00. *See* Dkt. No. 14 ¶¶ 11–12. Under Section 1132(g)(2)(D) of ERISA, an award of attorneys' fees and costs is mandatory in an action for unpaid contributions. *See LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC*, 2020 WL 70947, at *4 (S.D.N.Y. Jan. 3, 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Sullivan as Tr. of Stone Setters Loc. 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, 2020 WL 1528117, at *3 (S.D.N.Y. Mar. 30, 2020) ("In ERISA actions, courts use the lodestar approach to determine reasonable attorney's fees."). Reasonable hourly rates are the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," and the relevant community is "the district in which the court sits." *Cruz v. Loc. Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994). "Courts in this district have approved partner billing rates that range from $350 per hour to $425 per hour in ERISA delinquent contribution cases." *Bldg. Serv. 32BJ Pension Fund*, 2020 WL 70947, at *5 (collecting cases).

12

The Court has carefully reviewed Plaintiffs' contemporaneous time records and finds that Plaintiffs' request, including the hourly rate of $455.00, the total of eight hours expended, and the nature of the work, is reasonable. *See* Dkt. No. 14-10.[1]

Plaintiffs also seek $648.00 in costs for commencing the action and serving the Summons and Complaint upon the Defendant. Those costs include $405.00 for filing and $243.00 for service of process. As with attorneys' fees, under ERISA, an award of costs is mandatory. 29 U.S.C. § 1132(g)(2)(D). The Court takes judicial notice of the required filing fee. *See Taylor v. Cooper Power & Lighting*, 2025 WL 2524467, at *6 (E.D.N.Y. July 14, 2025). The service or process costs are supported by billing records and are reasonable. Dkt. No. 14-11; *see Sullivan as Tr. of Stone Setts Loc. 84 Pension Fund v. Prestige Stone & Pavers Corp.*, 2020 WL 2859006, at *15 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020) (approving cost that are "properly supported by billing records and receipts" that "are reasonable").

## CONCLUSION

The motion for default judgment is GRANTED. The Clerk of Court is respectfully requested to enter a judgment, jointly and severally in favor of all listed Plaintiffs, in the amount of $38,978.17, plus the additional interest to be calculated by the Clerk of Court through the date of final judgment, calculated as follows.

1. $24,315.29 in unpaid contributions;

---

[1] Although $455.00 is slightly higher than high end of the range described as reasonable in *Bldg. Serv. 32BJ Pension Fund*, more than five years have passed since that opinion. Adjusting for that difference in time, and taking into account the fact that the attorney seeking fees has been practicing in this field of law for over twenty years (since February of 1995), Dkt. No. 14 ¶ 11, the $455.00 rate is reasonable. The Court notes that this case has been handled particularly efficiently.

2.  $3,160.29 in interest as calculated in the underlying deficiency report through November 30, 2025;

3.  $4,863.06 in liquidated damages;

4.  $2,431.53 in an administrative charge;

5.  $3,560.00 in attorneys' fees;

6.  $648.00 in costs;

7.  additional prejudgment interest calculated on the contributions owed from December 1, 2025 through the date of entry of judgment, April 28, 2026, inclusive of the start and end date[2], at a rate of 18%, to be calculated as follows: 149 x (.18/365) x $24,315.29.

The Clerk of Court is respectfully directed to close Dkt. No. 12.

SO ORDERED.

Dated: April 28, 2026
        New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[2] The total number of days inclusive of the start and end date is 149 days.